## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                    Criminal No. 15-116(1)&(2) (DWF/JSM)

        Plaintiff,

                                    **MEMORANDUM OPINION**
v.                                           **AND ORDER ADOPTING IN PART**
                                  **REPORT AND RECOMMENDATION**

Mekiel Moore (1) and Jason Claybron (2),

        Defendants.


## INTRODUCTION

This matter comes before the Court on the parties' objections to the September 4,

2015 Report and Recommendation of Magistrate Judge Janie S. Mayeron ("R & R")

(Doc. Nos. 76, 77).  In the R & R, Magistrate Judge Mayeron considered eleven motions,

including nine suppression motions, filed either individually or jointly by Defendants

Mekiel Moore ("Moore") and Jason Claybron ("Claybron").

As to Moore, Magistrate Judge Mayeron recommended granting the motion to

suppress Moore's statements (Doc. No. 32), and she recommended denying the motion to

suppress evidence found during a search of a residence on Desoto Street in Maplewood,

Minnesota (the "Desoto Street Residence") (Doc. No. 33).  As to Claybron,

Magistrate  Judge Mayeron recommended denying all of Claybron's motions to suppress

evidence (Doc. Nos. 41, 42, 43, 44, 45, 46, 47), including Claybron's motion to suppress

evidence obtained through electronic tracking of phone number 952-xxx-xxxx (the "952

Phone") (Doc. No. 42).

In addition, Magistrate Judge Mayeron noted that she had already granted Moore and Claybron's joint motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (Doc. No. 53).  Magistrate Judge Mayeron found that Moore and Claybron were entitled to an evidentiary hearing pursuant to *Franks*, and she held the hearing on July 9, 2015.  (R & R at 70–72; *see also* Doc. No. 61 ("Tr. II").)  After the hearing, each Defendant submitted a memorandum in support of his pending motions (Doc. Nos. 65, 66), and the Government responded (Doc. No. 71).  In the R & R, Magistrate Judge Mayeron concluded that there was no constitutional violation under *Franks* and recommended denial of Moore and Claybron's joint motion to supplement each Defendant's motions to suppress evidence (Doc. No. 52).

Moore, Claybron, and the Government filed objections to the R & R (Doc. Nos. 80, 85, 86), the Government filed a response to Moore's and Claybron's objections (Doc. No. 89), and Moore filed a response to the Government's objections (Doc. No. 95).  Claybron did not file a response to the Government's objections.

The Court has conducted a *de novo* review of the record, including a review of the arguments and submissions of counsel, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b).  For the reasons set forth below, the Court (1) sustains Claybron's objection to the recommendation that evidence obtained through tracking of the 952 Phone be admissible; (2) overrules the Government's objection to the recommendation that Moore's statements be suppressed; and (3) overrules the Defendants' individual objections to the recommendation that the Defendants' joint request for leave to supplement their suppression motions be denied.  For the reasons set forth in the R & R,

2

the Court overrules all remaining objections and agrees with Magistrate Judge Mayeron's recommendations except for the recommendation that this Court deny Claybron's Motion to Suppress Evidence Obtained as a Result of Electronic Tracking of Phone Number 952-xxx-xxxx (Doc. No. 42).

## BACKGROUND

The Court incorporates the R & R by reference to the extent that it sets forth the factual background of this case.  Accordingly, the Court only briefly summarizes the factual background here.

On March 3, 2015, Detective Travis Serafin applied for and received a warrant to electronically track phone number 612-xxx-xxxx (the "612 Phone").  (Gov't Ex. 3.)  In the affidavit submitted in support of the application, Detective Serafin stated that a confidential informant ("CI") had informed him that a criminal street gang member known as "Hood" utilized the 612 Phone for narcotics trafficking.  (*Id.*)  Detective Serafin also stated that the CI had discussed narcotics transactions with Hood at that number.  (*Id.*)  On March 13, 2015, Deputy Josh Williams applied for and received a warrant to electronically track the 952 Phone.  (Gov't Ex. 4.)  In the supporting affidavit, Deputy Williams stated that Hood also utilized the 952 Phone for narcotics trafficking. (*Id.*)  Deputy Williams did not assert that the CI told him that the CI had spoken with Hood using the 952 Phone.  (*Id.*)  Among other things, the warrants for both phones authorized law enforcement to track the real-time location of the phones for a period of 60 days.  (Gov't Exs. 3, 4.)

On March 22, 2015, Detective Serafin applied for and received a warrant to electronically track a Nissan Juke that Claybron, the subject of an ongoing heroin trafficking investigation, was suspected of using. (Gov't Ex. 5.)  In the supporting affidavit, Detective Serafin stated that the CI had identified Hood as Claybron and that law enforcement officers had seen Claybron exiting the Nissan Juke. (*Id.*)  On March 30, 2015, police officers initiated a traffic stop of the Nissan Juke in Maplewood, Minnesota. (Doc. No. 57 ("Tr. I") at 24–27.)  Claybron was in the front passenger seat, and he told officers they could search the vehicle. (*Id.* at 28–30.)  After the Nissan Juke's driver asked an officer to retrieve $40 from the Nissan Juke's cup holder, the officer discovered a package of narcotics. (*Id.* at 32–33.)  On the same day, Officer Christofer Nybeck took a taped statement from Claybron at the Ramsey County jail.[1] (*Id.* at 90–91.)  Before taking the statement, Officer Nybeck read Claybron his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and Claybron stated that he understood them. (*Id.* at 91; Gov't Ex. 7.)

After the traffic stop on March 30, 2015, Detective Serafin applied for and received warrants to search the Desoto Street Residence and a residence on 10th Street in Saint Paul, Minnesota (the "10th Street Residence"). (Gov't Exs. 1, 6.)  In the affidavit supporting the application for a warrant to search the Desoto Street Residence, Detective Serafin stated that electronic surveillance revealed that the 612 Phone and the 952 Phone were regularly together in the area of the 10th Street Residence and the 952 Phone was

---

[1]    The R & R states that Claybron gave the statement to law enforcement on March 31, 2015. (R & R at 67.)  This appears to be a typographical error.

4

often at the Desoto Street Residence when the 612 Phone traveled to and from Chicago, Illinois.  (Gov't Ex. 1.)  Detective Serafin also stated that physical surveillance revealed Claybron entering and exiting the Desoto Street Residence on multiple occasions and that after Claybron was arrested, Claybron claimed to reside at the 10th Street Residence. (*Id.*)  The affidavit does not identify Moore but states that on March 27, 2015, Detective Serafin saw two "unknown males" exit the Desoto Street Residence.[2]  (*See id.*)

Later that day, a team of police officers executed the search warrant at the Desoto Street Residence.  (Tr. I at 68.)  Prior to the team's initial entry, Detective Erik Husevold witnessed an unknown male—later identified as Moore—exit the Desoto Street Residence with an unknown female companion.  (*Id.* at 68–69; 73–74.)  Moore and his companion entered an unknown car parked in the vicinity of the Desoto Street Residence. (*Id.* at 69; 75–76.)  A police squad car then hit the car from behind, and officers exited their vehicles with weapons drawn.  (*Id.* at 75–77.)  Officers ordered Moore and his companion out of the car and handcuffed Moore.  (*Id.*)  Without providing a *Miranda* warning, officers questioned Moore, still handcuffed, about the contents of the Desoto Street Residence, and Moore revealed the location of a gun and a backpack containing narcotics.  (*Id.* at 82–84.)  Within five to ten minutes of Moore's arrest, Officer Nybeck and Detective Serafin took a taped statement from Moore, still handcuffed, in the

---

[2]     Detective Husevold's testimony suggests that on March 24, 2015, Detective Serafin observed two black males exit the Desoto Street Residence.  (Tr. I at 77–78.)  It is unclear whether Detective Serafin observed two black males exit the Desoto Street Residence on two occasions, March 24, 2015 and March 27, 2015, or one occasion, in which case either Detective Serafin or Detective Husevold was mistaken about the date that the observation took place.

bathroom of the Desoto Street Residence.  (*Id.* at 86–87; Gov't Ex. 2.)  Prior to taking the

statement, Officer Nybeck read Moore his *Miranda* rights, and Moore stated that he

understood them.  (Tr. I at 87; Gov't Ex. 2.)

## DISCUSSION

**I.     Claybron's Motion to Suppress Evidence Obtained by Tracking Phone
        Number 952-xxx-xxx**

Magistrate Judge Mayeron recommended denial of Claybron's motion to suppress

evidence obtained through electronic surveillance of the 952 Phone.  She concluded that

probable cause did not support the warrant authorizing electronic surveillance but that,

under *United States v. Leon*, 468 U.S. 897 (1984), Deputy Williams had reasonable

grounds to believe that the court properly issued the warrant.  For the reasons stated in

the R & R, the Court agrees with Magistrate Judge Mayeron's conclusion that probable

cause did not support the warrant to track the 952 Phone.  The Court disagrees, however,

with Magistrate Judge Mayeron's application of *Leon*'s good-faith exception to the

Fourth Amendment's exclusionary rule.

A search warrant is valid, under the Fourth Amendment, if the warrant is based on

probable cause.  *E.g., United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

Probable cause exists when the affidavit submitted in support of the warrant application

"sets forth facts sufficient to create a fair probability that evidence of a crime will be

found in the place to be searched."  *United States v. Jeanetta*, 533 F.3d 651, 654 (8th Cir.

2008) (quoting *United States v. Grimaldo*, 214 F.3d 967, 976 (8th Cir. 2000)).

Under *Leon*, "evidence seized pursuant to a search warrant later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v.* Jackson, 784 F.3d 1227, 1231 (8th Cir. 2015). An officer's reliance on a warrant is unreasonable when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)).

Indeed, in the Eighth Circuit, an obviously deficient affidavit provides a basis for suppressing evidence. *United States v. Herron*, 215 F.3d 812, 815 (8th Cir. 2000). In *Herron*, officers obtained a warrant to search the defendant's residence for marijuana and implements of marijuana production. *Id.* at 813–14. Two affidavits supported the warrant application. The first stated that the defendant's neighbor, a person suspected of marijuana cultivation, told the affiant that he was staying at the defendant's residence. *Id.* at 813. The second stated that state law enforcement had advised the affiant that the defendant: (1) was a relative and associate of the neighbor suspected of marijuana cultivation; and (2) had two previous convictions for marijuana cultivation. *Id.* at 813-14. Although the Government conceded that the affidavit failed to support a finding of probable cause, it argued that the *Leon* good-faith exception applied. *Id.* at 814. The Eighth Circuit disagreed. It found that the affidavits provided "no evidence that there was any illegal activity at the [defendant's] residence and no evidence that [the defendant] ever participated in the cultivation of the marijuana found at [the neighbor's] farm." *Id.* Due to "the obvious nature of the deficiency," the Eighth Circuit concluded,

"the officers did not reasonably rely upon the issuing court's determination of probable cause for a search warrant."  *Id.* at 815.

Here, too, Deputy Williams's affidavit in support of the warrant to track the 952 Phone is obviously deficient.  Specifically, it contains only two pieces of information about the 952 Phone and its connection to narcotics trafficking:

- "Your Affiant learned from a CI that 'Hood' utilizes multiple cellular phones to assist him in narcotics trafficking.  Your Affiant has learned that 'Hood' is currently using the cellular number identified as 952-xxx-xxxx to conduct narcotics trafficking."  (Gov't Ex. 4.)

- "Your affiant believes that 'Hood' is in control of this phone with the number 952-xxx-xxxx.  Your affiant believes that "Hood" utilizes this phone to facilitate narcotics trafficking."  (*Id.*)

Significantly, the affidavit does not explain how Deputy Williams learned or came to believe that Hood, later identified as Claybron, used the 952 Phone to facilitate narcotics trafficking.  (*See id.*)  In contrast, Detective Serafin's affidavit in support of the warrant to track the 612 Phone states that "[t]he CI identified a phone number utilized by 'Hood' as 612-xxx-xxxx," and "[t]he CI has spoken with 'Hood' at the phone number identified as 612-xxx-xxxx and has discussed narcotics transactions."  (Gov't Ex. 3.)  Because Deputy Williams's affidavit provides nothing but conclusory statements regarding the relationship among the 952 Phone, Hood, and the narcotics trafficking, it fails to "create a fair probability" that tracking the 952 Phone will lead to evidence of narcotics trafficking by Hood.  *See Jeanetta*, 533 F.3d at 654.  Moreover, the lack of evidence—and the affidavit's deficiency—is obvious.  *See Herron*, 215 F.3d at 815.  Accordingly, Deputy Williams's belief in the existence of probable cause based on the affidavit was "entirely

unreasonable," and *Leon*'s good-faith exception does not apply.  *See Leon*, 468 U.S. at

923.  The Court will therefore suppress evidence obtained by illegally tracking the 952

Phone.

**II.     Moore's Motion to Suppress Statements**

Magistrate Judge Mayeron recommended granting the motion to suppress

statements made by Moore after he was detained.  First, Magistrate Judge Mayeron found

that Moore's detention was unlawful because:  (1) the search warrant for the Desoto

Street Residence did not authorize detention of Moore; (2) officers stopped and

handcuffed Moore outside the "immediate vicinity" of the Desoto Street Residence; and

(3) officers lacked "reasonable suspicion" that Moore was committing or had committed

a criminal offense.  Second, Magistrate Judge Mayeron concluded that Moore's

statements should be suppressed because Moore's unlawful detention tainted his

statements.  Although the Government objects to Magistrate Judge Mayeron's findings

and recommendation, its arguments are unpersuasive.

**A.     Search Warrant for the Desoto Street Residence**

The Court agrees with Magistrate Judge Mayeron's conclusion that the search

warrant for the Desoto Street Residence did not, on its face, authorize officers to detain

Moore.  The warrant for the Desoto Street Residence authorized officers to search,

among other things, "[a]ny person(s) currently occupying the residence."  (Gov't Ex. 1.)

This language does not support the officers' detention of Moore.  First, "person(s)

currently occupying the residence" means individuals within the Desoto Street Residence

at the time of the search.  In determining the scope of a search warrant in *United States v.*

9

*Sturgis*, 652 F.3d 842, 844 (8th Cir. 2011), the Eighth Circuit considered a warrant that authorized officers to search a residence, "any occupants within," and "any vehicles belonging to the occupants." The court explained that "occupants within" suggested "people *within* the house at the time of the search," whereas "occupants" without a modifying word was not so limited. *Sturgis*, 652 F.3d at 844. As such, the court concluded that "vehicles belonging to the occupants" extended to vehicles belonging to individuals who lived at the residence, even if such individuals were not within the house at the time of the search. *Id.*

In this case, the phrase "person(s) currently occupying" is similar to the phrase "occupants within" to the extent that the word "occupying" is modified by the word "currently." Thus, in light of *Sturgis*, "person(s) currently occupying" is fairly interpreted as "individuals within the Residence at the time of the search." Because Moore was in a car on the street at the time he was detained, Moore was not a "person currently occupying the residence" under the warrant.

Second, even if "person(s) currently occupying the residence" includes occupants not within the Desoto Street Residence at the time of the search, the officers executing the warrant lacked evidence that Moore was an occupant of the Residence at the time they detained him. In *Sturgis*, the Eighth Circuit recognized that an "occupant" of a residence can include a person who "regularly stay[s]" at the residence and whose "possession of keys and regular presence demonstrate control" over the residence. *Sturgis*, 652 F.3d at 844; *see also United States v. Johnson*, 640 F.3d 843, 845–46 (8th Cir. 2011). At the time that officers detained Moore, they knew only that that Moore had

10

recently exited the Desoto Street Residence.  They did not know Moore's identity, and

they did not know the identity of the car Moore entered.  They did not know if Moore

lived at the Residence, regularly stayed at the Residence, received mail at the Residence,

or possessed keys for the Residence.  Indeed, the Government concedes that officers did

not know whether Moore was an occupant of the Desoto Street Residence at the time that

they ordered him out of the car and handcuffed him.[3]  (Doc. No. 86 ("Gov't Objections")

at 6.)  In these circumstances, the warrant did not authorize detention of Moore.

### B.       Detention of Moore Outside the Desoto Street Residence

The Court agrees with Magistrate Judge Mayeron's determination that the

exception to the Fourth Amendment's probable cause standard articulated in *Michigan v.

Summers*, 452 U.S. 692 (1981), does not apply to this case.  In *Summers*, the Supreme

Court held that officers executing a warrant to search a person's residence may require

that person to remain at the residence while officers conduct the search.  *Summers*, 452

U.S. at 705.  The Court pointed to three law enforcement interests that justified the

exception:  (1) preventing flight by occupants of the residence; (2) minimizing risk of

harm to the officers executing the warrant; and (3) facilitating orderly completion of the

search.  *Id.* at 702–03.

---

[3]      The Government argues that Moore's detention was lawful because officers
needed to detain Moore to determine whether he was an occupant of the Desoto Street
Residence.  (Gov't Objections at 6–7.)  The Court disagrees.  Under *Terry v. Ohio*, 392
U.S. 1, 21–22 (1968), a police officer must reasonably suspect that a person is
committing or has committed a crime before he or she can conduct an investigatory stop
of that person.

Recently, the Court clarified that the *Summers* exception only applies in the "immediate vicinity" of the premises to be searched. *Bailey v. United States*, 133 S. Ct. 1031, 1042 (2013). The Court explained that an arrest beyond the immediate vicinity of the premises involves "an additional level of intrusiveness" not justified by the law enforcement interests cited in *Summers*. *Id.* at 1041–42. In addition, the Court offered three factors to courts determining whether a person was in the "immediate vicinity" of the premises: (1) the lawful limits of the premises; (2) the line of sight of the premises; and (3) the ease of reentry from the person's location. *Id.* at 1042.

In its objections to the R & R, the Government relies on *Summers* for the proposition that officers may detain a person outside a residence for which the officers have a search warrant. (Gov't Objections at 6.) But the Government ignores the limits of the *Summers* exception that *Bailey* set forth. Here, the evidence does not establish that Moore was within the "immediate vicinity" of the Desoto Street Residence when he was detained, as required by *Bailey*. Detective Husevold testified that he saw Moore exit the Desoto Street Residence and enter a car parked on the street and saw officers detain Moore outside of the parked car. (Tr. I at 74–75.) Detective Husevold, however, could not recall the location of the car with precision:

> Q.    And [the car] was actually parked one and a half townhomes down the street from [the Desoto Street Residence]; correct?
>
> A.    I wouldn't know if I could say it's one and a half townhomes. It would be actually up the street to the north, but I would say it was almost right in front of it, if not right in front of it. I don't know if I could say it was a town home and a half over.

12

(*Id.* at 74:14–20.)  Applying the first *Bailey* factor, the Court finds that Moore, who was in a car parked on the street, was not within the lawful limits of the premises when he was detained.  Considering the second and third factors, the Court finds that the evidence is inconclusive.  In particular, the Court rejects the Government's argument that Detective Husevold's ability to see both the Residence and the car from his location leads to the conclusion that "Moore also must have had a line of sight to the [R]esidence." (Gov't Objections at 12.)  Given the evidence in the record, the Court cannot conclude that Moore was in the "immediate vicinity" of the Residence when he was detained.

Further, the law enforcement interests set forth in *Summers* and revisited in *Bailey* support Magistrate Judge Mayeron's conclusion that the *Summers* exception did not apply.  The first interest, preventing flight, involves the officers' interest in controlling individuals at the scene of a search to ensure that they do not interfere with the search or leave the scene with evidence or the means to find evidence.  *Bailey*, 133 S. Ct. at 1040. It does not, however, justify "detention, while a search is underway, of any regular occupant regardless of his or her location at the time of the search." *Id.* at 1041.  Here, Moore left the premises before the search began, so the interest in preventing his "flight" was minimal.  As the *Bailey* Court noted, "[e]ven if the detention of a former occupant away from the premises could facilitate a later arrest should incriminating evidence be discovered, 'the mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment.'"  *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 393 (1978)).

The second interest, minimizing risk of harm to officers, involves the officers' interest in searching the premises without fear that individuals on the premises will become disruptive or dangerous. *Id.* at 1038. Here, as in *Bailey*, Moore left the premises, and if he had returned, the officers could have detained him under *Summers*. *See id.* at 1039. It is possible, as the Government suggests, that Moore, sitting in the car on the street, would have noticed the officers in the area and warned individuals inside the Residence. At the same time, it is also possible that Moore was about to drive away and never would have noticed the officers. In these circumstances, the interest in minimizing risk of officer harm was at most moderate.

The third interest, facilitating an orderly search, involves the officers' interest in minimizing distractions and obtaining assistance from occupants. *Id.* at 1040. The *Bailey* Court noted that the interest in obtaining assistance "must be confined to those persons who are on site and so in a position, when detained, to at once observe the progression of the search." *Id.* Because Moore left the premises prior to the search, he posed a minimal threat to the proper execution of the search, and he was not immediately available to assist with the search. In short, applying *Bailey* to the evidence in the record, the Court concludes that Moore's detention violated the Fourth Amendment.

### C.    Reasonable Suspicion to Conduct an Investigatory Stop

The Court agrees with Magistrate Judge Mayeron's finding that officers lacked reasonable suspicion, under *Terry v. Ohio*, to detain Moore. In *Terry*, as in *Summers*, the Supreme Court articulated an exception to the probable cause standard. Specifically, an officer may conduct a temporary, investigatory stop when he or she "reasonably suspects

that the person apprehended is committing or has committed a criminal offense."

*Arizona v. Johnson*, 555 U.S. 323, 326 (2009).  In assessing the justification for a *Terry*

stop, courts must consider the "facts available to the officer at the moment of the

seizure."  *Terry*, 392 U.S. at 21–22; *see also United States v. Clay*, 640 F.2d 157, 159

(8th Cir. 1981).

   Here, at the time officers detained Moore, they knew only that he had just exited

the Desoto Street Residence.  They did not know Moore's identity, the identity of his

companion, or the identity of the car they entered.  Further, there is no evidence that

Moore exhibited suspicious behavior or appeared to be carrying a weapon.  The Supreme

Court recognizes that "[a]n individual's presence in an area of expected criminal activity,

standing alone, is not enough to support a reasonable, particularized suspicion that the

person is committing a crime."  *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citing

*Brown v. Texas*, 443 U.S. 47 (1979)); *see also Clay*, 640 F.2d at 159–60.  Accordingly,

under *Terry*, Moore's presence at the Desoto Street Residence, prior to the officer's

search of the Residence, is not a sufficient basis for detaining Moore.

   The Government makes two primary arguments challenging this conclusion.  First,

the Government argues that police observation of Moore exiting the Desoto Street

Residence, a few days prior to the search warrant's issuance and execution, provided a

basis for a *Terry* stop.  (Gov't Objections at 9–11.)  The Court disagrees.  Reasonable

suspicion is based on what the officers knew at the time that they detained Moore.  *Terry*,

392 U.S. at 21–22.  A few days prior to the search at the Desoto Street Residence,

Detective Serafin saw two men exiting the Residence, at least one of whom was

unknown.  (Gov't Ex. 1; Tr. I at 77–78.)  After officers detained Moore and searched the Residence, Detective Serafin was able to identify one of the men he had previously seen as Moore.  (Tr. I at 72–73, 78.)  At the time that officers detained Moore, however, they did not know that Detective Serafin had seen Moore at the Residence.  As such, Detective Serafin's observation of Moore, prior to Moore's detention, cannot provide a basis for the reasonable suspicion necessary to conduct an investigatory stop under *Terry*.

Second, the Government argues that this case is analogous to two Eighth Circuit decisions, *United States v. Patterson*, 885 F.2d 483 (8th Cir. 1989) and *United States v. Garcia*, 441 F.3d 596 (8th Cir. 2006).  (Gov't Objections at 10–11.)  Both cases, however, are distinguishable.  In *Patterson*, the police searched the defendant after he arrived at a residence while police were executing a search of that residence.  *Patterson*, 885 F.2d at 484.  The court explained that the search was permissible under *Terry*, because police had previously observed the defendant's van at the residence, and drug paraphernalia had been found at the residence before the defendant arrived.  *Id.* at 484-85.  In *Garcia*, an officer approached the defendant in a parking lot and asked for permission to search his truck.  *Garcia*, 441 F.3d at 597–98.  The court found that the stop was permissible under *Terry*, because "[t]he officer had seen [the defendant] at a known drug house, acting in a furtive manner, trying to make contact with residents while concealing an object in his pants, then removing the object and placing it in the back of his truck after he failed to make contact."  *Id.* at 598.

Here, in contrast to both *Patterson* and *Garcia*, the officers who detained Moore knew only that Moore had just exited the Desoto Street Residence, for which the officers

had a warrant.  Unlike *Patterson*, officers were not familiar with Moore's vehicle, and they had not yet found any contraband at the Residence.  Unlike *Garcia*, there is no evidence that Moore was acting furtively or concealing any objects.  Thus, neither *Patterson* nor *Garcia* controls this case.  Moore's detention violated the Fourth Amendment.

### D.      Taint of Illegal Detention

The Court agrees with Magistrate Judge Mayeron's decision that the statements made by Moore, after he was unlawfully detained, must be suppressed.  A confession made as a result of an illegal detention must be suppressed "unless that confession was 'an act of free will [sufficient] to purge the primary taint of the unlawful invasion.'" *Kaupp v. Texas*, 538 U.S. 626, 632–33 (2003) (quoting *Wong Sun v. United States*, 371 U.S. 471, 486 (1963)).  In determining whether the taint of illegal detention is sufficiently purged, courts consider "observance of *Miranda*, '[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official misconduct.'"  *Id.* at 633 (quoting *Brown*, 422 U.S. at 603–04).  Because Magistrate Judge Mayeron addressed each of these factors in the R & R, the Court addresses only the final factor, the purpose and flagrancy of the unlawful detention.

A Fourth Amendment violation that has an investigatory purpose or involves force, threats, or intimidation may be deemed purposeful or flagrant.  *United States v. Whisenton*, 765 F.3d 938, 942 (8th Cir. 2014).  When officers arrested Moore, they did not know his identity and had no information connecting him to narcotics trafficking,

other than the fact that they had just seen him exit the Desoto Street Residence.  This lack of knowledge suggests that officers detained Moore, at least in part, for investigatory purposes—that is, they "hope[d] that something might turn up."  *See Brown*, 422 U.S. at 605.  Further, in detaining Moore, a squad car hit the car Moore was occupying, officers exited their cars with guns drawn, officers ordered Moore and his companion out of the car, and officers handcuffed Moore.  These actions are consistent with actions "calculated to cause surprise, fright, and confusion."  *See id.*  Finally, Moore was handcuffed and detained in a bathroom at the time that he made his tape-recorded statement.  *Cf. Whisenton*, 765 F.3d at 942–43 (noting that lack of handcuffs weighs in favor of finding purgation).  The Court will suppress Moore's statements.

### III.    Moore and Claybron's Motion for Leave to Supplement Motions to Suppress

Magistrate Judge Mayeron recommended denial of Moore and Claybron's joint motion for leave to supplement their motions to suppress with a motion for a *Franks* hearing.  Under *Franks*, a defendant is constitutionally entitled to a hearing on the veracity of a search warrant affidavit if the defendant makes a substantial preliminary showing that a false statement was included, knowingly and intentionally or with reckless disregard for the truth, in the affidavit.  *Franks*, 438 U.S. at 171–72.  The Court notes that Magistrate Judge Mayeron considered Moore and Claybron's joint motion for a *Franks* hearing (Doc. No. 53).  Magistrate Judge Mayeron held a hearing on the *Franks* issue, and she analyzed the veracity of the search warrant affidavits in the R & R.  (R & R at 68–74.)  To the extent Moore and Claybron's motion requests leave to further supplement their suppression motions, the Court denies the motion.

18

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant Mekiel Moore's objections (Doc. No. [80]) to Magistrate Judge Janie S. Mayeron's September 4, 2015 Report and Recommendation are **OVERRULED**.

2.      Defendant Jason Claybron's objections (Doc. No. [85]) to Magistrate Judge Janie S. Mayeron's September 4, 2015 Report and Recommendation are **SUSTAINED IN PART AND OVERRULED IN PART**.  Claybron's objection to Magistrate Judge Mayeron's recommendation that Claybron's motion to suppress evidence obtained by tracking phone number 952-xxx-xxxx be denied is **SUSTAINED**.  Claybron's remaining objections are **OVERRULED**.

3.      Plaintiff United States of America's objections (Doc. No. [86]) to Magistrate Judge Janie S. Mayeron's September 4, 2015 Report and Recommendation are **OVERRULED**.

4.      Magistrate Judge Janie S. Mayeron's September 4, 2015 Report and Recommendation (Doc. Nos. [76], [77]) is **ADOPTED IN PART**.  The Court **ADOPTS** all portions of the Report and Recommendation except those:  (1) addressing the applicability of the good-faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984) to the admissibility of evidence obtained through electronic tracking of phone number 952-xxx-xxxx; and (2) recommending denial of Claybron's motion to suppress evidence obtained by tracking phone number 952-xxx-xxxx (Doc. No. [42]).

5.     Defendant Moore's Motion to Suppress Confessions, Admissions or Statements Made in the Nature of Confessions Made by the Defendant (Doc. No. [32]) is **GRANTED**.

6.     Defendant Moore's Motion to Suppress Evidence Obtained Through Illegal Search (Doc. No. [33]) is **DENIED** to the extent it requests suppression of physical evidence seized from xxxx Desoto Street, Maplewood, Minnesota, on March 30, 2015. The Court is unaware of any physical evidence seized from Moore's person or vehicle.

7.     Defendant Claybron's Motion to Suppress Evidence Obtained as a Result of Electronic Tracking of Phone Number 612-xxx-xxxx (Doc. No. [41]) is **DENIED**.

8.     Defendant Claybron's Motion to Suppress Evidence Obtained as a Result of Electronic Tracking of Phone Number 952-xxx-xxxx (Doc. No. [42]) is **GRANTED**.

9.     Defendant Claybron's Motion to Suppress Evidence Obtained as a Result of Electronic Tracking of Nissan Juke Bearing MN Plate 357xxx (Doc. No. [43]) is **DENIED**.

10.     Defendant Claybron's Motion to Suppress Evidence Obtained as a Result of Unlawful Stop, Search and Seizure of Defendant (Doc. No. [44]) is **DENIED**.

11.     Defendant Claybron's Motion to Suppress the Statement of Defendant (Doc. No. [45]) is **DENIED**.

12.     Defendant Claybron's Motion to Suppress Evidence Obtained as a Result of Unlawful Search at xxxx Desoto St. (Doc. No. [46]) is **DENIED**.

13.     Defendant Claybron's Motion to Suppress Evidence Obtained as a Result of Unlawful Search at xxx East 10th St. Apt. xxx (Doc. No. [47]) is **DENIED**.

14.     Defendants' Joint Motion to Supplement Defendants' Motions to Suppress

Evidence (Doc. No. [52]) is **DENIED**.


Dated:  December 15, 2015              s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       U.S. District Court Judge